IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDON ROBERTS, *
        Plaintiff,
   v. * CIVIL ACTION NO. AW-09-1404

BOBBY P. SHEARIN, et al., *
        Defendants. *
                           *****

## **MEMORANDUM OPINION**

Plaintiff filed this civil rights action on May 28, 2009, seeking injunctive relief and damages, and alleging that directives issued at the North Branch Correctional Institution banning hardbound books prevented him from purchasing educational, legal and religious books in violation of his constitutional rights. Paper No. 1. Plaintiff also alleges that when the ban was lifted as to general population inmates but maintained as to segregated inmates, his rights were further violated. *Id*. Plaintiff also claims he has been denied the right to freely practice his religion,"Kinetic Science," because, as a segregation inmate, he has not been given access to religious programming or the opportunity to speak with a religious minister. *Id*.

On December 21, 2009, Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment. Paper No. 20. Plaintiff has not filed a response.[1] Defendants' motions shall be granted without oral argument. *See* Local Rule 105.6. (D. Md. 2010).

### **1. Factual Background**

<u>Books</u>

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on December 21, 2009, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 21. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id.* Despite Plaintiff having sought and been granted three extensions of time to respond to the dispositive motion (Paper Nos. 22-27), to date, he has failed to do so.

On July 15, 2008, NBCI inmates were advised that hardbound book were no longer permitted in the institution and would be classified as contraband. Paper No. 20, Ex. 1. Inmates received a memorandum from the Mailroom Supervisor advising them that all hardback/bound books receivecd into the institution would be withheld from the inmate and the inmate given the option of returning the book order in whole to the sender or sending the hardback/bound book home at the inmate's expense. The option of having the cover removed was no longer available. *Id*., Ex. 1 and 2.

On August 21, 2009, hardback books were made allowable to all general population and administrative segregation inmates. The items remained contraband for inmates on disciplinary segregation. *Id*. Ex. 1. NBCI issued a new directive regarding books advising inmates as to which inmates would be permitted to receive hardbound books and of the policy for receiving same. *Id*., Ex. 1.

The prohibition on hardback books resulted after weapons were found in the binding of some books. *Id*., Ex. 3. After x-ray machines and a security procedure for scanning hardback books was put in place the ban was lifted as to general population and administrative segregation inmates. *Id*. The ban was not lifted as to disciplinary segregation inmates as prison officials determined that disciplinary segregation inmates had a higher propensity for violence and could use the books as weapons. Moreover, the ban was deemed to be "a proven deterrent to unacceptable behavior and a method of reducing violence" among disciplinary segregation inmates. *Id*. While disciplinary segregation inmates may not possess hardbound books, they are permitted to order materials through the library and to subscribe to periodicals. *Id.*

Religion

Plaintiff's religion, Kinetic Science, is not recognized as a valid religion by the Maryland Division of Correction ("DOC"). Paper No. 20, Ex. 4. DOC policy provides that any inmate whose religious needs are not met through existing religious programming shall submit a request for

religious accommodation through his institutional chaplain or by sending the request directly to the DOC's Religious Services office. *Id*. Ex. 5. Plaintiff has not formally requested accommodation to practice Kinetic Science. Plaintiff was advised by Chaplain Lamp to make any request to practice Kinetic Science to the Religious Director for the DOC and was provided with contact information and told what information should be included in his request. *Id*. Stephanie Coates, Director of Religious Services for the Office of Programs and Services, avers that there are no records of Plaintiff having made a request to have Kinetic Science recognized as a religion permitted to receive faith accommodations. Coates conducted an internet search regarding Kinetic Science as a religion and located only one article which did not provide any defining practices. *Id*. Ex. 5. Coates and Lamp aver that no other inmate housed at NBCI has discussed with the religious department a desire to have Kinetic Science recognized by the DOC as a religion eligible for faith accommodation. *Id*., Ex. 4 and 5.

### 1. Standard of review

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## 2. Analysis

**A.     Books**

While a state can create constitutionally protected liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relations to the ordinary incidents of prison life." *Sandin v. Conner*, 515, U.S. 472, 484 (1995). Generally, a prison may place restrictions on inmates' receipt of written materials only when those restrictions are reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89, (1987). Defendants have determined that hardcover books are a risk to institutional security amongst disciplinary segregation inmates and that the ban on hardcover books is an effective management tool for those inmates. Plaintiff is permitted to receive soft cover reading materials and will be able to obtain hardcover reading materials when he is removed from disciplinary segregation. While on disciplinary segregation he is permitted to access permissible materials from the library and subscribe to periodicals. Paper No. 20, Ex. 1 and 3. Because Plaintiff does

not have constitutionally protected liberty interests at stake regarding his unfettered access to all reading materials, he has suffered no violation of due process.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

A prisoner wishing to demonstrate a Fourteenth Amendment burden on his right of access to the courts "must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), *quoting Lewis*, 518 U. S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. To the extent that Plaintiff claims that his inability to purchase hardcover books while housed on disciplinary segregation adversely impacted his access to legal materials, there has been no showing of harm resulting from that deprivation. There has been no allegation that a deadline was missed or Plaintiff was unable to pursue a meritorious claim.

To the extent Plaintiff alleges that his religious freedom was infringed upon by his inability to order hardcover books, his claim likewise fails as he has provided no specifics regarding this allegation. In determining whether prison rules and regulations pass constitutional muster, courts apply a lesser standard of scrutiny out of deference to the complexities of prison administration, with which federal courts are not adept at dealing. *See Turner v. Safley*, 482 U.S. 78, 81 (1987). Under

*Turner*, an action by prison officials that infringes upon a prisoner's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *Id*. at 89. "If the law makes no distinction between actions based on religious conviction and action based on secular views, it is a generally applicable law, neutral toward religion and not violative of the First Amendment." *Hines v. South Carolina Dept. of Corrections*, 148 F.3rd 353, 357 (4th Cir. 1998). Plaintiff's temporary ban from receiving hardcover books was reasonable in light of staff concerns regarding disciplinary inmates' propensity for violence and the ability to convert hardcover books into weapons or conceal weapons within them.

**B.     Religious Practices**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this Court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

Defendants have presented considerable evidence that Plaintiff has failed to follow the procedure for seeking a religious accommodation for his desire to practice Kinetic Science. Paper No. 20, Ex. 4 and 5. Rather than formally requesting a religious accommodation through the institutional chaplain or the religious services office, Plaintiff filed a request for administrative remedy. In dismissing his administrative remedy he was advised that Kinetic Science was not a religion recognized by the DOC. *Id*., Ex. 1. Chaplain Lamp spoke with Plaintiff regarding his desire to receive a faith based accommodation for Kinetic Science, and avers that Plaintiff was directed to contact the DOC's Office of Religious Services to begin the process for doing so. *Id*., Ex. 4. Rather than make his request for religious accommodation through the appropriate channels, Plaintiff took no further action; thus, Defendants did not evaluate Plaintiff's claims or determine whether Kinetic Science ought to be included as a recognized religion entitled to accommodation.

Director of Religious Services for the Office of Programs and Services, Stephanie Coates, avers that an inmate whose religious practices are not addressed through existing religious programming is to submit a request regarding the need to his institutional chaplain or directly to the Religious Services Office. The inmate will then be interviewed and directed to provide the name of the religion, the specific practice requested, the name and address of an authority on the religion who can provide information about the religion, and the title of literature which may provide information about the religion and its practices. An investigation will then be undertaken to determine whether there is a body of literature stating specific religious principles, "whether the practice is recognized

7

by a group sharing common ethical, moral or intellectual views," how the practice is viewed by authorities within the religion, and whether any existing religious program can accommodate the requested practice. *Id*. Ex. 5. The religious authorities named by the inmate will be interviewed and any relevant literature reviewed and a decision on the inmate's request shall be made within forty-five days. *Id*. In the instant case this process was not undertaken because Plaintiff failed to initiate same. In short, Plaintiff's complaint is premature given that he has not taken the initial steps to have his religion and requested accommodations recognized. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim concerning the failure to accommodate his religious practices.

## Conclusion

In light of the foregoing Defendants' Motion for Summary Judgment shall be granted. A separate Order follows.

Date: September 7, 2010

_____/s/_____
Alexander Williams, Jr.
United States District Judge